## Dickinson College *against* Church.

In a *scire facias* upon a mechanic's lien against the owner of a building, and the contractor who constructed it, by him who furnished the lumber, in which it appeared that the contractor had been fully paid for his work and materials, he is not a competent witness for the owner. But he may be made competent by a release from the owner for his liability over to him for costs, to which he might be subjected in the event of a recovery against him.

In a *scire facias* upon a mechanic's lien against the owner of a building, and the contractor who constructed it, the plaintiff may give in evidence the declarations of the contractor as to the materials received and the amount remaining due, but such admissions ought to be received with great caution, and subjected to the nicest scrutiny; but his declarations that the lumber was received on the credit of the building, are not evidence.

In such case, it is competent for the defendant to give evidence to prove that the amount of the lumber charged in the plaintiff's account, is greatly more than could have been put into the building.

If part of an account filed as a mechanic's lien be for lumber furnished to the contractor before he entered into the contract, which could not be a lien, and a part afterwards which was used in the building, and there be a credit in the account of the lumber-man for a payment, it may be referred to the jury to determine whether the payment shall be applied to that part of the account which was a lien, or that which was not.

ERROR to the Common Pleas of *Cumberland* county.

Robert R. Church against Trustees of Dickinson College, owners, and Henry Myers, contractor. *Scire facias sur* Mechanic's Lien.

The claim filed was for boards, planks, scantling, joists, shingles, &c., alleged to have been furnished to Henry Myers, for the use of the new academy at Carlisle, the bill for the same commencing the 22d of January 1837, and ending 13th November of that year, said stuff being furnished to Myers at various times between those dates.

Amount of same, . . . . . . . . . . . . . $1477.34
1837, June 26, by cash for lumber first got, receipt for
   same, . . . . . . . . . . . . . . . . .     400.00
                                            ――――――――
                                          .  $1077.34

The contract between Myers, the contractor, and the trustees of Dickinson College, owners, for building the grammar school, admitted to have been made 6th of April 1837.

The book of original entries of R. R. Church was then pro-

duced; all the entries for the lumber, &c., except the last one, were against Henry Myers alone, without specifying any building in which the same was to be used; the last entry, to wit, that of the 13th of November 1837, was to " Henry Myers, for the new Academy at Carlisle."

The plaintiffs offered to prove that the account was made out at length from the books, including every item and its price; that it was examined by Mr. Myers, assented to, and promised to be paid. Accompanied with the charge in the book of original entries of plaintiff of item, dated 20th of February 1837, and to read that item from the book, and the same offer to embrace items got under similar circumstances after 6th of April 1837. Objected to.

That Henry Myers is a competent witness, and his declaration can only affect himself; no admission or agreement he could make after the account ceased could charge Dickinson College. This objection to apply to all items similarly situated in the account.

Objection overruled. Exception taken by defendants.

After this evidence was given, it was admitted that Henry Myers by his contract was to get $5800 for building and furnishing all the materials for the grammar school, and that the same had been fully paid to him by the trustees.

The defendants then called John Turner as a witness.

1. Defendants offered to prove by the witness that he worked as a journeyman with Henry Myers, at the building of the defendants. That the whole amount of shingles used upon it does not exceed 10,000; the whole amount of boards and plank does not exceed 25,000 feet; and that the whole amount of scantling does not exceed 20,000; whereas the plaintiff's claim filed contains 24,000 shingles, 60,000 feet of boards, and 40,000 feet of scantling.

2. That Henry Myers was a large contractor, and had various contracts on hand at the time; that the lumber claimed was not delivered at the building of the defendants, nor used in it, but was used in other places; that it was impossible to use the amount of lumber claimed in this case in the building erected for the defendants by Mr Myers.

Objected to that it was irrelevant, and calculated to mislead the jury. Offer rejected by the court. Exception taken by defendants.

Defendants offered Henry Myers, the defendant in the *scire facias*, as a witness. Objected to by plaintiff.

1. That he is the contractor referred to in the lien filed.

2. That he is a defendant in the case trying.

3. That he has a direct interest in the result of the trial.

Witness rejected by the court. Exception taken by the defendants.

[Dickinson College v. Church.]

The defendants asked the instruction of the court to the jury upon several points, only one of which is it material to state, which was this:

" The payment of $400 having been credited on the account of materials furnished for said building, the price of which was a lien thereon, said credit can not be now withdrawn and applied to any other purpose."

To which the court answered by referring it as matter of fact to the jury to determine whether it was to be so applied or not.

The several bills of exception, and answer of the court to defendants' point, were the subject of the errors assigned.

*Biddle* and *Watts*, for plaintiffs in error.
*Reed*, for defendant in error.

The opinion of the Court was delivered by

ROGERS, J.—The 27th of April 1837, the trustees of Dickinson college entered into a contract for the erection of a grammar school, in the borough of Carlisle.   The contractor agreed to erect the building and furnish the materials, for the sum of $5800, all of which has been paid by the trustees.   It appears that Myers was a contractor, not only for that building, but for others in the neighbourhood ; that he procured his materials in the first place, from Church & Crist, and after the dissolution of their partnership, from Robert R. Church, the plaintiff.   The price of the materials not being paid, the plaintiff files a claim against the building, for the sum of $1077.34, which he alleges to be due. The account begins the 22d of January 1837, and ends the 13th of November 1837; and is opened in the books of Church, as a charge against the contractor alone, without any allusion to the college, except in the last item.   The whole amount of the account, is $1477.34, on which Myers paid $400, which is credited generally, the 26th of June 1837.   The suit is brought against the college and the contractor, for the purpose of recovering the money due, as for materials furnished by the plaintiff on the credit of the building.   It is not denied that the lumber was purchased by the contractor, but it is denied that it was furnished on the credit of the building.   The defendants allege that they were sold on the personal responsibility of the contractor, who at the time, as was well known to the plaintiff, was engaged in the erection of other buildings.   That the college is not chargeable with part of the account, was admitted at the trial, and indeed, it would require more than ordinary hardihood to deny it, as it was in proof that the account commenced the 27th of January, and that the contract for the erection of the grammar school, was not made until the 26th of April following.   All this, however, the plaintiff attempted to explain by parol testimony:

and the admission and rejection of the evidence which was offered for this purpose, form the subject of the several bills of exception.

The first and second bills may be considered together. Was Henry Myers, the contractor and one of the defendants in the suit, a competent witness? Second: Can his declarations, and to what extent, be given in evidence to affect the college?

This is a proceeding *in rem.* The contractor is joined in the suit, for the benefit of the owner of the building. It is required that he should be a party, that he may furnish proof, if necessary, to prevent an overcharge in the amount of materials, and to prove any payment which he may have made on the contract. But, although he is a party to the suit for these purposes, yet he can not be reached personally in this action, nor is he directly liable, as has been already ruled, for the costs. The objection to his competency cannot be rested on these grounds. But has he not, notwithstanding, an interest in the event of the suit? If the plaintiff recovers in this action, the contractor will be answerable over, at the suit of the college. In that action the judgment here will be evidence, not only for the amount of the debt recovered, but also for the costs incurred in this suit; and in some flagrant cases, perhaps for damages for breach of his contract. Whereas, in a suit by the material man, he would be liable for the debt with the costs alone, in that suit. He has then an interest to prevent the recovery, as he cannot be said to have an equality of interest. This case, however, is not an exception to the rule, which enables a party to restore the competency of a witness by a release. The next question is, whether his declarations, and to what extent, can be given in evidence in this proceeding. It would seem to follow from the above remarks, that the admissions of the contractor may for some purposes be given in evidence; but the utmost latitude which ought to be allowed, is his admissions as to the materials which have been received, or the amount which may remain due; and even these ought to be admitted with great caution, and subjected to the nicest scrutiny. In this case declarations were allowed, whose only tendency was to prove that the lumber was furnished on the credit of the building; and these declarations, it must be remarked, were made, not at the time of the sale, but afterwards. It was not, therefore, part of the *res gestæ,* and admissible on that score. In this we think the court have gone too far. Such testimony would put the owner completely in the power of the contractor and lumberman; and as in general it is only when the contractor is insolvent that resort is had to the building, it is a most dangerous species of proof.

The account, which, be it observed, commences about three months before the contract for the building, is charged, except the last item, against the contractor. He, so far as appears on the account, is the only debtor; and the only manner in which any

I.—59

[Dickinson College v. Church.]

lien can be made to attach, is by the introduction of parol proof, as to the intention of the contracting parties. Under these circumstances, the owner of the building offers the evidence contained in his second bill, which is excluded, I am led to believe, because it was irrelevant, calculated to mislead the jury, and based as was supposed, on a perversion of the fact in this, that although the account commenced on the 27th of January, yet the plaintiff only claims that part of it, which begins on the 27th of April. I am not very forcibly struck with the justice of this complaint, under the suspicious aspect in which this case is presented. It does not seem to me, that it is dealing unfairly with the plaintiff, to take the account as it appears on his own book. But making every allowance for the items charged in the intermediate time, there is still an excess of materials to no trifling amount, charged over the quantity, which the defendants offered. to show, could by any possibility be required in the erection of such an edifice. The evidence tended strongly to show gross negligence, if not fraud, in what we esteem to have been the duty of the vendor. It is a great mistake, which cannot be too soon corrected, if any suppose that when a person undertakes to furnish lumber to a contractor on the credit of a building, that he is relieved from inquiring into the nature of the building he trusts, whether it is brick or frame, whether it is a one or three story house, or whether it is large or small: that in short, he can furnish materials enough to complete a three story house of the largest dimensions, when the materials are intended for a house of the most inferior description. The very fact that he credits the building, and does not depend altogether on the personal responsibility of the contractor, should, it would seem, immediately suggest the propriety of making the necessary inquiries, as to the size, materials, and nature of the intended erection. We do not say that a trifling excess over what the most rigid economy would require, will vitiate the account; that would be an unnecessary, or perhaps, unjust restriction; but when it is obvious that it is the result either of negligence or fraud, sound policy and a just regard to the interests of owners, require that the consequences should be visited on his own head. If any other rule is adopted, there will be no security for owners, as the materials charged, may, and often will, exceed the value of the building itself. It is not indispensable, as was ruled in *Church* v. *Davis*, (9 *Watts* 304,) that the account should be opened against the building. The Act does not prescribe the kind of evidence necessary to prove that the debt was thus contracted, but leaves that to depend upon the ordinary rules of evidence. Yet notwithstanding, it would be well worth the serious attention of the vendors to pay some attention to this, as when this is omitted, the account comes before the court in rather a suspicious and questionable shape. It enables material men, when a contractor is engaged

[Dickinson College v. Church.]

in different works at the same time, to fasten a lien on all, or any one, or more of them, at his pleasure. The owner should have at least, all the advantage that may arise from an unequivocal intention to hold the building answerable to the amount of the materials which may be furnished. It very often happens, that when the materials are purchased, the personal responsibility of the contractor is deemed amply sufficient; but subsequent events make it expedient to resort to another security. This affords a temptation, which is irresistible, to create a lien by the aid of parol testimony, when such a thing never entered into the imagination of either vendor or vendee. When this is the case where there is more than one building, it will be usually entered against that building which happens to afford the best security for the debt.

We see nothing wrong in the answer of the court to the plaintiff's second point; for although we are of the opinion that the testimony should be scanned with the greatest severity, yet we perceive no error in leaving the determination of the fact to the jury. The whole case shows the difficulties that result from the manner of keeping the account. If the first account had been closed as it ought to have been, and the second had been opened in proper form against the contractor and the building, describing it, no such difficulty could have arisen. If any loss accrues to the plaintiff, he has his own negligence to blame for it.

Judgment reversed, and a *venire de novo* awarded.