## Moser v. Loeper et al.

*Mechanic's lien—Sub-subcontractors—Right to file lien.*

1. Under the Act of June 4, 1901, P. L. 431, and its supplements, sub-subcontractors have no right to file mechanics' liens.

2. It is the contract for the erection exclusively which communicates the owner's power to bind the building to the contractor by a mechanic's lien, and this power does not extend beyond the right to make subcontracts.

3. Where a mechanic's lien claimant has failed to make the contractor a party to the lien and has filed the lien against the owners only, the lien is fatally defective.

4. In a proceeding upon a mechanic's lien, admissions in the pleadings have the same effect as admissions contained in pleadings filed in common law cases.

Rule to strike off mechanic's lien. C. P. Schuylkill Co., Sept. T., 1925, No. 15.

*W. L. Kramer* and *C. A. Whitehouse,* for defendant.

*Joseph W. Moyer* and *L. E. Enterline,* for plaintiff.

BERGER, J., Sept. 13, 1926.—William M. Moser, the claimant, filed a mechanic's lien for material alleged to have been furnished and work and labor alleged to have been done in the erection and construction of the Loeper hotel building at Ashland, Pa., of which P. H. Loeper and Anton Loeper are the owners. The building, it is alleged in the lien, was erected and constructed by Stofflet and Tillotson, employed by the owners as contractors and builders. The architect was W. H. Lee, and Fegely and Moore erected the structural steel required for the building, pursuant to a contract with Stofflet and Tillotson. The lien claimant bases his claim upon a contract with Fegely and Moore, sub-contractors for the erection of the steel. The lien is entitled and entered against the owners only, who filed a petition and obtained a rule to show cause why it should not be stricken from the record for matters of fact specifically alleged in the petition. The claimant made answer to the petition, but did not traverse any of the material allegations of fact therein contained; his answer to the petition being, in substance, but not in form, a demurrer. And in his answer he also gave notice of an intended application to move for the amendment of the lien. The claimant's answer to the rule to strike off, and his petition to amend, were filed April 5, 1926, and the same day a rule issued on the latter petition to show cause why the amendment should not be allowed. The owners, in effect, demurred to the petition to amend. After the questions raised or suggested by the parties had been presented to the court by oral argument and the submission of written briefs, the owners discovered that through inadvertence their petition to strike off the lien did not state that the claimant was a sub-subcontractor, and also that only one of six different items of claim for soft coal, twelve and one-half tons in the aggregate, delivered to the Loeper hotel premises by the claimant, had been attacked, whereas it was the intention of the owners to attack all such items. By agreement of the parties, the rule to strike off the lien has now been so amended as to raise properly the questions, first, whether the claimant is a sub-subcontractor, and, if so, whether this is fatal to the lien which he has filed; and, second, whether a right of lien exists for the soft coal furnished to the hotel premises during the course of the erection of the hotel.

The owners' contention that the claimant is a sub-subcontractor not entitled to file a lien raises the controlling question in this case. In paragraphs 5 and 6 of his lien the claimant sets forth the basis of his alleged right of lien thus:

"5. The name of the sub-contractor with whom claimant contracted is Fegely and Moore, the sub-contractors employed by Stofflet and Tillotson to erect the steel. Part of the work, to wit, the unloading and hauling of the structural steel, was also authorized by Stofflet and Tillotson, through its superintendent, and the entire contract for work and materials furnished was, subsequent to its performance, ratified and approved by said Stofflet and Tillotson and said P. H. Loeper and Anton Loeper.

"6. Said work was done and materials furnished under and by virtue of a verbal contract made on Dec. 10, 1924, with Thomas W. Moore acting on behalf of said Fegely and Moore, by which it was agreed by and between said Fegely and Moore and claimant that said claimant should unload from cars and haul to the building site of the proposed Loeper Hotel all the structural steel at an agreed price of three ($3.00) dollars per ton. Said agreement was subsequently reduced to writing, as appears by Exhibit 'A' hereto attached and by reference thereto made part hereof. At the same time, it was also agreed that claimant should haul the equipment of said Fegely and Moore, then at Mt. Carmel, to Ashland, unload, by means of a steam shovel, other equipment, and any other miscellaneous hauling, at the usual prices for such work, and furnish so much soft coal as said Fegely and Moore required at the rate of twelve ($12.00) dollars per ton, delivered at the building site. Claimant avers that the prices charged on Exhibit 'B' for the hauling and unloading by steam shovel were and are the usual prices for that character of work, and that the twelve and one-half (12½) tons of coal as delivered were ordered and accepted by said Fegely and Moore."

Mechanics' liens are purely of statutory origin, and complete compliance with statutory requirements is essential to their validity: Dyer v. Wallace, 264 Pa. 169. The right of a sub-subcontractor to a lien, if it exists, must, therefore, be conferred by the Act of June 4, 1901, P. L. 431, and its supplements. Section 1 of the Act of 1901 defines the words used to describe that which may be subject to and bound by mechanics' liens, and defines or describes the parties to such liens, when the right of lien exists. A sub-contractor is defined as "one who, by contract or agreement, express or implied, with the contractor or with one who acts for him, superintends the structure or other improvement, or any part thereof; or furnishes labor, skill or superintendence thereto; or supplies or hauls material reasonably necessary for and actually used therein, or any or all of them, whether as superintendent, builder or materialman; excluding, however, architects and those contracting with materialmen." A sub-contractor is, therefore, one who has no contract directly with the owner or his agent or agents. Section 2 of the act provides that every structure or other improvement and the appurtenant curtilage shall be subject to a lien for all debts due to the contractor or sub-contractor in the erection and construction thereof. It is to be noted that a sub-subcontractor is neither defined by the act nor mentioned as one who has a right of lien for any debt due him for work done or materials furnished in the erection and construction of any structure or other improvement.

The precise question in hand was considered in Harlan v. Rand, 27 Pa. 511, where Harlan, as owner, had a contract with Singerly for the construction of an entire building; Leeds, a sub-contractor under Singerly, the principal contractor, a contract for the instalment of all the heating apparatus; and Rand a contract under sub-contractor Leeds for the execution of a part of his (Leeds') work, by furnishing work and materials necessary to the instalment of the heating apparatus; and it was held that the lien filed by Rand, a sub-subcontractor, had no validity. In Tebay v. Kirkpatrick, 146 Pa. 120, 123,

Moser v. Loeper et al.

Sterrett, J., cited Harlan v. Rand, 27 Pa. 511, and in applying it to the Mechanics' Lien Act of June 16, 1836, P. L. 696, said: "Claims of workmen and materialmen do not become liens on a building from the mere fact that the work was done or the materials furnished for its erection; they must be founded on a contract, express or implied, with the owner of the estate sought to be charged. The Lien Law of 1836 provides only for 'debts contracted' for work and materials: Section 1, Act of June 16, 1836, P. L. 696. When the owner employs a house-builder to erect a house for him, the parties are directly connected by contract, and the lien must be founded thereon. 'It is the plain and obvious duty of one who deals with an alleged contractor to know the relation which he bears to the owner; failing in this, he furnishes labor and materials at his peril:' Brown v. Cowan, 110 Pa. 588. Hence, it was said in Schroeder v. Galland, 134 Pa. 284: 'The only connection between the owner and the sub-contractor was through and by means of the written contract between the owner and the principal contractor.'" Dean, J., in Waters v. Wolf, Executrix, et al., 162 Pa. 153, 162, said that Harlan v. Rand laid down three propositions which had been followed, namely: "(1) The debt which is the subject of the lien must be founded on a contract, express or implied, with the owner. (2) When the owner employs a contractor to erect for him a house, a debt founded on a contract of the contractor with a sub-contractor or materialman is by implication authorized by the contract of the owner, and, therefore, is the subject of a lien. (3) It is incumbent on such sub-contractor or materialman to ascertain whether one assuming to be the principal contractor has authority to bind by lien the property of the owner."

All the cases which have been brought to our notice, and the cases which are therein cited and discussed, proceed upon the principle that it is the contract for the erection, exclusively, which communicates the owner's power to bind the building to the contractor, and this power does not extend beyond the right to make sub-contracts. See Duff et al. v. Hoffman et al., 63 Pa. 191; Schenck v. Uber & Tees, 81 Pa. 31; Brown v. Cowan & Steele, 110 Pa. 588; Schroeder v. Galland, 134 Pa. 277; Owen & Salter v. Johnson, 174 Pa. 99; Horn & Brannen Co. v. Steelman, 215 Pa. 187; Mortar Co. v. Cassell, 15 Pa. Superior Ct. 330; Smith v. Stokes, 10 W. N. C. 6.

In 1 Cushman on Mechanics' Liens, 95, 96, the statement is made and amply supported by authority that "One who furnishes material to or performs labor for a sub-contractor is not entitled to a mechanic's lien against the property in and about the erection and alteration of which said labor or material was furnished. Such mechanics and materialmen are not considered as having done work or furnished material on the credit of the building, but rather on faith in their employer. Were any other construction of the statute admitted, a mechanic's claim could be filed by every individual workman engaged by the principal, even for a day or to the extent of preparing a bed of mortar. This would soon be felt to be intolerable." And in vol. 6, section 4985, page 134, Thompson on Real Property, in speaking of sub-contractors, lays down this rule: "The term 'sub-contractor' is sometimes used in a broader sense, and as including all persons employed directly or remotely under the contractor; but this use of the term is not warranted except by the plainest expressions of the statute. In some states a sub-contractor in the second or more remote degree is not entitled to a lien given to a sub-contractor and not in terms given to contractors under a sub-contractor. The statutes do not generally extend the privilege to any but direct sub-contractors; and to extend it beyond them the statute must give the privilege in the plainest terms. 'If the right to the lien can be extended indefinitely, then it is very

obvious there would be no safety in contracting for the erection of a building, and no prudent man would do it.' " In our opinion, the plaintiff is a sub-[sub]contractor, and as such unauthorized by the Act of 1901 to file a lien. We think, too, that the items for which a lien has been filed in this case come within the provisions of section 22 of the Act of 1901, and must be asserted, if at all, under a lien filed by Fegely and Moore, the sub-contractors, through a petition for the substitution of Moser, the sub-subcontractor, as the use-claimant, to the extent that any of his unpaid items may be included in the sub-contractor's lien, if any there be.

Notwithstanding the unequivocal allegation of paragraph 3 of claimant's lien that "the contractor and builder employed by the owners for the construction thereof (the hotel) is Stofflet and Tillotson," the claimant has failed to make the contractor a party to the lien, and has filed it against the owners only. This is a fatal defect which could not now be cured by amendment, unless with the owners' consent: McCay's Appeal, 37 Pa. 125, 128; Good-fellow v. Manning, 148 Pa. 96; Ward and McKeever v. Black, 7 Phila. 342; Murta et al. v. Stephenson, 2 Dist. R. 480. Paragraphs 5 and 6 of the claimant's lien clearly show that every item of claim is founded upon a contract which the claimant had with Fegely and Moore, the sub-contractors. The claimant has not at any time contended that a sub-subcontractor has the right of lien in our State under the Act of 1901, but he seems to have sought to avoid that question, first, by failing to make the original or principal contractor for the erection of the building, well knowing who he was, a party to the lien; and, second, by an averment in paragraph 5 of the lien that "the entire contract for work and materials furnished was, subsequent to its performance, ratified and approved by said Stofflet and Tillotson and said P. H. Loeper and Anton Loeper." The lien is filed against the owners only, and not against them as owners and contractors, for the erection of the building upon their ground, although the contention of the claimant is that the owners are liable as original contractors with him.

In a proceeding upon a mechanic's lien, admissions in the pleadings have the same effect as admissions contained in pleadings filed in common law cases. In paragraph 10 of the claimant's answer to the rule to strike off the lien we find the clear and unequivocal averment made by him that he is entitled to file a mechanic's lien as a sub-contractor. No facts are stated in the lien to support the allegation that Stofflet and Tillotson, the contractors, and the owners, the Loepers, ratified and approved the contract which the lien claimant had with Fegely and Moore after it had been completely performed, and that allegation must, therefore, be disregarded, because it is merely a legal conclusion of the pleader, without any supporting facts to sustain it. It was the claimant's duty to know whether he acquired a right of lien against the owners' property before he entered into the contract with Fegely and Moore or did anything pursuant thereto, and the mere fact that anything which he may have done entered into the construction of the building is insufficient either to confer the right of lien or to support the allegation that by ratification the owners of the building made themselves directly liable to the lien claimant as owners and contractors. Besides, the claimant, in his answer to the rule to strike off the lien, by the unequivocal averment that he claimed the right of lien as a sub-contractor, negatives his contention that the owners were or became directly liable by contract. For the reason that the claimant is a sub-subcontractor, the rule to strike off must prevail.

Rule to strike off the mechanic's lien is hereby made absolute.

From M. M. Burke, Shenandoah, Pa.